Please call the first case. Case number 5-12-0043, Mark Witherspoon v. Workers' Compensation Commission. Counselor, you may proceed. May it please the Court, Mr. Haislip, my name is Bruce Sorener. I represent Mark Witherspoon. Mr. Witherspoon was awarded benefits of 15% by the arbitrator. As a commission, the decision was reversed and compensation was denied. The Circuit Court confirmed the decision to commission Mr. Witherspoon to appeal in this court. There are two diseases on the table, pneumoconiosis and acid. Mr. Witherspoon only has to prevail on one to win. I'm going to start with the acid. First, there are two points to make. The totality of the evidence supports the finding of the disease of asthma. And second, in looking for ways to deny the claim, the Commission created new standards and burdens of proof that are not part of the law and not within the power of the Commission to create them. The Commission majority said it ruled against asthma because it cannot rely solely on a single exam by a non-treating physician. It didn't weigh conflicting evidence. It said it takes more than one test. The critical part of that malice is that the Commission didn't cite any evidence in the record to prove that Dr. Paul's methacholine test was invalid or wrong. And it didn't decide to believe respondent's expert instead of petitioners in a weighing of the evidence. In fact, Dr. Selby found asthma too, just not based on testing. He didn't give a methacholine test and he didn't see Dr. Paul's test. He called it occult asthma, and as far as I can figure out, that means undiagnosed asthma. The Commission just said that one test isn't enough. Dr. Paul, who is the only doctor in the record who is board certified in asthma and has written a book on it, didn't have any of that play a part in the decision. Mr. Swartz, let me ask you a question. Did the Commission find that the claimant failed to prove he suffers from asthma? Did the Commission conclude that the claimant failed to demonstrate that the symptoms or asthma was attributable to his work? Lack of a causal connection. They didn't say definitively he doesn't suffer from asthma, did they? I mean, there is a difference. I was so caught up in reading it that it was apparent to me that, particularly based on their discussion of pneumocloniosis, that they were saying that they didn't believe he had it because it wasn't in the records, it wasn't documented in the records. I'll admit it's a little bit confusing. The basis of the decision was that the petitioner can't win if he only has one test by a non-treating physician to prove disease, and that's wrong because he actually burdens a preponderance of the evidence. This is particularly important in this case because the respondent knew that asthma was one of the two diseases on the table, and it had Dr. Paul's objective testing for eight months when it made its tactical decision to not have Dr. Selby give a methacholine test and to not give him Dr. Paul's testing. By this evidence, the only objective test for asthma, a methacholine challenge, was performed by Dr. Paul, and it was positive. Dr. Selby, for the company, found that Mr. Witherspoon did have a cough asthma. The reports and testimony of both Dr. Paul and Selby confirmed that the petitioner had symptoms of asthma, the testimony of the petitioner supported the diagnosis, and the testimony of the co-worker supported the diagnosis. Mr. Witherspoon, I'm going to give you one paragraph on the commission's decision. That wasn't what they decided this case on. They decided this case on a lack of proof of causal connection between his physical condition and his employment. It's a well-known axiom that the burden lay with the employee to demonstrate a causal connection between a claimed injury and his or her employment. In the immediate case, the commission cannot rely solely on a single examination by a non-treating physician to find that such a connection exists. In the absence of medical records chronicling the petitioner's condition, the commission cannot help but find that the petitioner failed to demonstrate that his claimed respiratory complaints are attributable to his work. And that's, as I was saying to Justice Hudson, was confusing to me. Because let's say that the records had been admitted. They're not, but let's say they've been admitted and they had no complaints of asthma. Well, we know he has asthma because he objected to tests. Let's say there were complaints of asthma. Does that mean that's related to the work? Unless they're saying that you have to have treatment records that not only document the symptoms, but say it's from work. Well, somebody has to give an opinion that it's from work. That's your burden to do. Who did it? Dr. Paul. Well, they said that they don't rely on a single examination by a non-treating physician to find that causation. Don't blame them. And that's their privilege to do. Well, that's my question. To disbelieve them? I think the question is, was that a credibility finding or conclusion the commission was making or was it they're saying as a matter of law? It sounded to me just like they did it in pneumoconiosis, a matter of law. One test by a non-treating physician isn't going to get it done for a petitioner. And that's the way I read it. That's what I think is wrong as a matter of law. It's not a preponderance of the evidence. But I only raise the issue because you seem to be arguing that they said that they would not rely on this examination by a single physician to find out that he had asthma. That's not what this opinion of theirs is based on. It's based on a lack of causation between asthma, if he has it, and his employment. You read that paragraph? That's what it says. And in that paragraph, what did it say they were looking for in there? They were looking for a chronicling of the symptoms of asthma. No. That's not relating it to work. Cannot help but find that they failed to demonstrate that his claimed respiratory complaints are attributable to his work for the respondent. And what they said they were looking for in those records was a chronicling of the symptoms. Of his condition. Well, that's not going to prove which way it went either way. Well, usually when a doctor hears the symptoms, he generally gives an opinion as to what the cause is. And you'll find that in medical records left and right. I'm not saying he doesn't have asthma. I mean, you can't defend that position. I think that in terms of an injury, you're correct. I think that in terms of a disease, it's not correct. Normally, in my looking at disease, they say, well, the guy's in with a cough. They treat the cough. They don't say what the cough was from. Sometimes they say it was from smoking, but that doesn't mean that it wasn't from something else, too. So I agree with you as you're studying an injury case, a work conflict. As you're studying a disease case, I find it to be the other way. But also, I look at the claim works of what they wrote. They were looking for a chronicling of the symptoms, which, again, won't tell you. Well, what about that? Let's talk about that as it may vary in credibility. Klayman testified, as I understand it, reviewing the record that his breathing problems got worse. Is that a fair assessment? He testified they got worse. Yes. Then why weren't there any complaints to his doctors about his breathing problems? Two things. First is, who knows what goes through the mind of a coal miner? I can't go in a coal mine. Most of the coal miners I know have to lie to themselves every day before they go in there, saying, I'm not going to get hurt today. I know that other guys have black lung or whatever. It's not going to be me. They lie to themselves. I know that a lot of them don't go to their doctor at all. They don't want a paper trail. They don't want the company to know they have that. I know that a lot of them expect it. That's part of the deal. They're not educated. It's the best job they can get. They're going to put food on the table for their families. If they get sick doing it, that's the way it's going to be, and they don't complain to their doctors about breathing. Is this the individual who had needle phobia? I may be thinking of another term you have to take. Another case? Another case. Never mind. And, again, I take what you read, Justice Hoffman, in light of the whole decision, and it started out with a completely, I think, absurd statement that just because you have pneumoconiosis doesn't mean you have any kind of disability. When the totality, 100% of the record, not just in this record but any record, in common sense and the law says, if you have pneumoconiosis, you have scarring in the lungs. The scarring cannot perform the function of normal, healthy lung tissue. Therefore, by definition, you have an impairment in the function of your lungs. It's indisputable. There's no evidence to the contrary. You also have a medical preclusion of further exposure. Both doctors said so. Maybe I was prejudiced by that as I was reading the last paragraph, but I got in here and I saw this is a commission that does get what they're writing. The first time I read it, I thought, what are they saying? And I liked what the dissent said. I said, he gets it. Then I read it a couple more times, and I thought, well, you know, the majority gets it, too. They want you to tell them that they can't do this or else they're going to keep doing it. They have an animus against black lungs because what they said on coworkers' pneumoconiosis is impossible to be true under this record. So perhaps when I went to asthma, I was leaning a little bit too hard on that. Nonetheless, I still think it holds. I think it's improper for the commission to talk about and decide on records which are not treatment records, which are not in the records. If the treatment records aren't in the record, they don't exist. So to require a petitioner to offer them when he doesn't need to I think is wrong as a matter of law. It's creating a new standard, a burden for the petitioner that he shouldn't have to have. Now, with that in mind, let me skip over to coworkers' pneumoconiosis because I think this is the key to the case. I think it sets the tone of the whole thing. They give the existence of disease, but then say it doesn't make any difference. It said, quote, it does not find that a diagnosis of pneumoconiosis automatically necessarily equates to a fine immunization. But that statement is completely contrary to the totality of the evidence, common sense, and the law. There's no evidence in this record whatsoever, or any other that I know of, that would support finding the commission of joy. Both experts said if you have pneumoconiosis, by definition you have an impairment in the function of the lungs at the site of the scarring of the disease. The entirety of the record, in common sense, at any level holds that scar tissue can't perform the function of normal healthy lung tissue. Pneumoconiosis causes a loss of function, and the totality of the evidence says that loss is permanent. And the process that caused it to be there may cause it to progress, even when the miner leaves the coal mine. Mr. Whistler, just to clarify something, make this absolutely clear, you were not appealing the finding on the CWP claim, were you? I was, very imperfectly, very crudely. Even though you said in your prior brief the CWP claim has not been pursued on appeal, quote, unquote, didn't you say that? The briefs were written without it. When I went to the circuit court, I raised it. The judge put it in the record that I raised it and said I was not waiving any issues. Sometimes this happens. It was not in those briefs. However, I would say two things. Number one, I did raise it. If that doesn't get the job done, I'll say that this court has the power, whether I raised it or not, if a decision's agreed, it's enough to bring it up on your own. And when you have a decision like this, where the commission decides 100% against the evidence of both doctors on both functional impairment and a preclusion going back to work, it cannot stand. And I would ask you, even if you find it against me, that by bringing it up at oral argument at the circuit court, I didn't preserve it, if that's the ruling, that you bring it up yourselves. It's within your power. And it's the critical element of co-worker's pneumoconiosis. Not only in terms of this case, and not only in terms of what co-worker's pneumoconiosis itself means, but as you read this decision, like I said, maybe I got started off wrong, because that hit me so hard that I was expecting more down the line. How could you beat him on the CWP question when he had one expert that said he had it and the other expert said he didn't? And the commission turned around and the only one they cited, in their opinion, was Dr. Selby. Dr. Selby obtained x-rays of the petitioner's chest, but determined that the x-rays to be of poor quality. Dr. Selby concluded that the petitioner did not have CWP, and that the petitioner's respiratory capabilities were at least normal, if not better. So you've got Selby saying he's got it, you've got your guy saying he doesn't have it, you've got your guy saying he's got it, and the commission doesn't award him any benefits. I see the second paragraph on the first page of their decision, which lists Dr. Paul and the petitioner's evidence, and it says, the commission, however, does not find that a diagnosis of pneumoconiosis is automatically a necessary equation, despite the fact that he had it. We knew he ran off at the mouth. There's no question about it, and they don't know what they're talking about in that regard. But the fact of the matter is, there was evidence for, there's evidence against, they don't award it, and they make the decision. So to say in your reply brief that you're not really appealing it was probably a very smart thing to do to direct your attention to the asthma question. The only thing I didn't do was the smart one, I feel bad about that. Nonetheless... At least you received some compliment. I appreciate that, and I need it this morning. But as I look at this case, I see this as a case of whether the commission can set new standards, new burdens of proof. I think they went beyond what they could do. I think that the statement there about pneumoconiosis not necessarily meaning they're disabled is so egregious. It colors everything they said and pushes it to the case that, yeah, they found it, and they're sticking it on your table and saying, can we get away with this? Can we get away with saying that you've got to have more than one test? Despite the fact that the other side says he's got it too. I'm going to asthma now. Your time is up, Mr. Pizzori. You have time on the clock. Thank you. Mr. Haslund, may I proceed? Good morning. May it please the Court, Mr. Pizzori. Very briefly, Justice has already read two of my paragraphs. This is a manifest weight, questions only. I think the question earlier about was it a question of law or a question of credibility, I think it's clearly a question of credibility. I don't see any question of law with regard to that issue that was raised. The Commission weighed the evidence and found that Dr. Paul's opinions were lacking. The briefs, as we went through the case, really centered on the issue of a term called occupational asthma. I went through Dr. Paul's report. I went through his testimony. The phrase occupational asthma is nowhere in there except for a single question by counsel during the deposition. By the term I mean occupational asthma. The only time it's in the deposition is are there exposures in the environment of a colon that can result in occupational asthma? My point is there's no opinion from Dr. Paul that the petitioner has occupational asthma. His opinion is that the petitioner has asthma and ordinary disease of life based on a single testing. There's been a lot of talk about the fact that Dr. Selby did not perform the methadone challenge test. I know as you've read through Dr. Selby's testimony, he gave a very lengthy explanation as to why it wasn't necessary. It's got nothing to do with... Mr. Hazen. Yes. What do you say about the sentence, the commission, however, does not find in the diagnosis of CWP automatically necessarily equates to a finding of disability? I want to know what the word disablement means. What the statute says it means. Now, aren't these commissioners required to have some modicum of knowledge of what they're hearing? I mean, you know, that's nonsense. That's utter nonsense. If somebody's got CWP, they're disabled. They can't go back to the old way. And, you know, one way or another, whether we affirm or we reverse this, I mean, they've got to be told to go to the books and study what they're hearing. I mean, this is nonsense. I... Maybe they were thinking of using the term impairment instead of disablement because those two words are bandied about and a lot of times they're used interchangeably. You can have CWP and not be impaired. Well, you may be able to go to work, but you ain't going to work in a coal mine. I'm sorry? You may be able to go to work, but you're not going to work in a coal mine. Exactly. If you truly have co-workers' pneumoconiosis, you have no business, you can go back to working in a coal mine. That's your choice. Well... But should you go... If you truly have it, and only a small percentage do, but if you do have it, you should not be going back in a coal mine. I agree 100%. Well, here's the issue. Did they find, you know... Did they really mean, as Justice Hoffman was alluding to with the sluice language, he didn't have asthma, there was no evidence of CWP, or that the evidence failed to establish a causal relationship between the alleged respiratory difficulties and employment? Isn't that really what they concluded, sir? That was my first thought process reading through it. Can you have co-workers' pneumoconiosis and there not be a causal connection to your coal mine employment? It depends on your length of exposure. If you're more than 10 years, by law, no. This man had 29 years, I think it was. Yeah. And it depends on whether you're underground and above ground, there are other factors, but if you have co-workers' pneumoconiosis and you've been an underground coal miner for more than 10 years, it's a given. See, here's the problem, I think that we're all, one, there's two issues, there's CWP and there's asthma. But we do have a problem with this commission, the way they're writing up this decision. And we're all saying, I think what they mean is, and I think what they mean is, they have clerks to write these decisions up, don't they? Yes, sir. Okay. It seems that somebody ought to be educating somebody there. I mean, because it's kind of hard to figure out, are they applying the wrong standard to the facts? What are they doing here? It's a problem for this court, it's a problem for the council, we understand that. I think in this case, I think we may get around one of the problems because I think the co-workers' pneumoconiosis issue is waived. I don't even think that's for consideration for this court. I don't think there's anything here that's so egregious that would rise to the level of this court taking that on and just saying we don't have to consider the waiver issue. This is a situation of if petitioner had medical records from primary care physicians documenting breathing problems and documenting treatment for and complaints to the doctors and just giving the history to the doctors, we all know those records would be admitted. The fact that records are not admitted doesn't mean they don't exist. Can I interrupt you for a moment? I want to concentrate here a little bit more on what's already been discussed and that has to do with whether or not the commission actually found CWP. Other than the statement that Justice Hoffman read to you here just moments ago that the commission, however, does not find that a diagnosis of CWP automatically necessarily equates to a finding of disablement. Is there anything else in the commission's decision that could arguably lead you to believe that they found CWP? No. I thought you were going the other way. I thought that my reading of it was that they did not find CWP and they inartfully worded in the first page of the decision what we've been discussing. I don't think there is a definitive statement by the commission that we found petitioner has CWP but he didn't prove causation. But did they say that? They never said they found he had it, did they? The commission never said it. The commission never concluded that he had it. That's correct. So if a commission finding or decision can contain dicta, this would be dicta. Yes, sir. I don't believe there are any new standards here. As was discussed earlier, this is a manifesto question. The commission chose Dr. Selby based on his expertise as a board certified internist, a board certified pulmonologist, and a certified bee reader. Dr. Paul is an excellent physician whose specialty is asthma. But we're talking about a single visit and Dr. Paul, as an asthma specialist, does methacoline challenge tests on everybody. And it's a question... Is it arguable to say he doesn't because it is the best, most accurate test? Even Selby said that. I wouldn't do that unless it was an astronaut. Yes. But a methacoline challenge test is something that is peculiar to asthma doctors. It really begs the question of if he had asthma at this point in his life, and I know a lot about it because I have adult onset asthma, but if you have it, where is it in the records? And that's one of the key points the commission is getting to is you've got Dr. Paul saying he has asthma based on this one test. In his entire life, where's the other evidence? If you had it, you would have presented it. The fact that you didn't present it must lead us to the conclusion that it's not there. So they're permitted to make negative inferences. Absolutely. Thank you, and we would ask that you reply. Thank you, Mr. Hazlitt. Mr. Rezor may reply. I'm afraid I'm a little bit helter-skelter on this. Mr. Hazlitt said that Dr. Paul didn't say what the asthma was from, but at page 12 or 13 of his deposition, he said his coal mine exposure was a causative and aggravating factor in his asthma. So, so much for that. Now, Justice Hoffman, when I go to the decision, which is the only thing I have to go to, and I say, did they find he had pneumoconiosis? The only place they talk about it is in that second paragraph. That's the only place that there are words where they're indicative of, are we finding pneumoconiosis? And specifically what they do is they acknowledge Dr. Smith, board-certified bee reader, that he concluded there was early mild pneumoconiosis, and Dr. Paul's testimony that he had pneumoconiosis. Then the word however, which is the key word. We recognize they found it. However, we find that a diagnosis of pneumoconiosis automatically necessarily does not equate to a finding of disability. That's where they push pneumoconiosis off the table. Not on whether it existed or not, but that it doesn't make any difference. What do you do with the paragraph where they talk about Selby's testimony? All they said was Selby's, he read it and found it negative, which they would have to. When you're summarizing what the doctor said, you said he did this test, he did that test, he found it negative. But in that paragraph, it's not talking about whether they found it or not. It's not talking about whether pneumoconiosis is going to count or not. All that occurs in that second paragraph on the first page, in which they don't even mention Selby at all. Well, in that case, why did they even talk about Selby? Three paragraphs later, when they turned around and said, Selby concluded the petitioner did not have CWP, and the petitioner's respiratory capabilities were at least normal, if not better. I think they did it because they're reviewing what Dr. Selby said. Why would they have to if they turned around and found out he wasn't able to see? I don't see it here. I don't see it. I don't see anywhere where it says, we find he doesn't have pneumoconiosis. I don't see it anywhere. You know, you want to split hairs. You want to split hairs on a horribly written decision. And you want to interpret it one way, he wants to interpret it the other way. How about this? Well, that's another option. And get the silliness out of these opinions. All right, Mr. Wessler, let me ask you this final question. I mean, this is a manifest way of the evidence. Don't we review the ultimate decision the commission reached under that standard, or do we review their reasoning? If they had written it as manifest, in my reading, if they had written it as manifest way, I've come up here 75 times the wrong way, and all but one I left unhappy. When they decide something in manifest way, if they decided seldy, if they said, we believe seldy and not Smith and Paul. Even if they had faulty reasoning? Sure. But not a faulty test. Not a faulty burden. You see, when you're putting this case together, and you say, how can I win this case? And you're getting your evidence together. You say, well, I've got a positive methicolene test from Dr. Paul. They decided not to give one. They didn't even give them Dr. Paul's results. I don't need anymore to prove he's got asthma. Dr. Paul says he's what caused it, and he's the only one they can rely on. I mean, he's the guy that diagnosed it. Dr. Selby said, I think he's got it, but he didn't test for it, and that was the extent of what he said. And so, you know, you get back to, and again, I may be led astray by emotions on this, but you get back to the treater records that weren't admitted. Treater records. You don't know the qualifications of the treater. You don't know what he said to the minor. You don't know what the minor said to him. You don't know if he wrote down all that was said. Treatment records in a disease case are extremely thin evidence, particularly in light of having a history, the same thing that the treater did, taken by an expert, and in light of a positive, objective test. And why would it make any difference whether that objective test was given by the treater or by an outside expert? It was valid. It doesn't make any difference. It's an objective test. And then when you look at that last paragraph again, this is awful, they start out saying it's a well-known axiom, if the burden lays with the employee, the demonstrator calls a connection. Yeah, we know that. That's an axiom. In the immediate case, the commission cannot rely on a single exam by a non-treating physician to find that such a connection exists. I agree with that, because testing does not tell you the etiology. So that test by itself wouldn't. And again, it's an example of they're off on the wrong trail. They're moving down the wrong trail. And then it's confirmed by saying, in the absence of medical records chronicling petitioner's condition. How would that tie it to one thing or another, chronicling that he did have asthma attacks, or that he didn't have asthma attacks? And by the way, in response to a question that came up about the methacholine challenge, what the methacholine challenge does is it makes you have an asthma attack. Okay. Your time is up. Thank you, Mr. Resor. Mr. Haslip, thank you both. This matter will be taken under advisement, a written disposition shall issue.